# United States Court of Appeals for the Federal Circuit

04-1395


CHECKPOINT SYSTEMS, INC.,

Plaintiff-Appellant,

v.


ALL-TAG SECURITY S.A. and ALL-TAG SECURITY AMERICAS, INC.,

Defendants-Appellees,
and

SENSORMATIC ELECTRONICS CORPORATION,

Defendant-Appellee.


Dennis R. Suplee, Schnader Harrison Segal & Lewis LLP, of Philadelphia, Pennsylvania, argued for plaintiff-appellant. With him on the brief were Nancy Winkelman, Robert A. McKinley and Thomas W. Hazlett.

Theodore A. Breiner, Breiner & Breiner, L.L.C., of Alexandria, Virginia, argued for defendants-appellees All-Tag Security S.A., et al. With him on the brief was Jennifer A. Pulsinelli.

Christopher K. Hu, Morgan & Finnegan, L.L.P., of New York, New York, argued for defendant-appellee Sensormatic Electronics Corporation. With him on the brief was Herbert Blecker. Of counsel were Richard W. Erwine and Richard Martinelli.

Appealed from: United States District Court for the Eastern District of Pennsylvania

Judge Petrese B. Tucker

# United States Court of Appeals for the Federal Circuit

04-1395

CHECKPOINT SYSTEMS, INC.,

Plaintiff-Appellant,

v.

ALL-TAG SECURITY S.A. and ALL-TAG SECURITY AMERICAS, INC.,

Defendants-Appellees,

and

SENSORMATIC ELECTRONICS CORPORATION,

Defendant-Appellee.

DECIDED: June 20, 2005

Before MICHEL, <u>Chief Judge</u>, SCHALL, and DYK, <u>Circuit Judges</u>.

SCHALL, <u>Circuit Judge</u>.

This appeal arises out of a suit for patent infringement. Checkpoint Systems, Inc. ("Checkpoint") is the owner of United States Patent No. 4,876,555 ("the '555 patent"). Checkpoint sued All-Tag Security, S.A. (Belgium) and All-Tag Security Americas, Inc. (collectively, "All-Tag"), as well as Sensormatic Electronics Corporation ("Sensormatic"), for infringement of the '555 patent. On April 22, 2004, the district court granted summary judgment in favor of All-Tag and Sensormatic on the ground that the '555

patent is invalid because it incorrectly lists Paul R. Jorgenson as the sole inventor in violation of 35 U.S.C. § 102(f). Checkpoint Sys., Inc. v. All-Tag Sec. S.A., 315 F. Supp. 2d 660 (E.D. Pa. 2004). In granting summary judgment in favor of All-Tag and Sensormatic, the court relied upon the 2002 declarations of Jorgenson, Franz H. Pichl, and Lukas A. Geiges stating: (i) that Jorgenson was not the sole inventor of the subject matter claimed in the '555 patent; (ii) that Jorgenson and Pichl were joint inventors; and (iii) that Pichl's name was intentionally not included on Application Serial No. 168,468 ("the '468 application"), the application which matured into the '555 patent.

Checkpoint now appeals the decision of the district court. It argues, inter alia, that the declarations of Jorgenson, Pichl, and Geiges, filed in 1988 during prosecution of the '468 application and stating that Jorgenson was the sole inventor of the subject matter claimed in the application, create a genuine issue of material fact on the issue of inventorship. As a result, Checkpoint contends, the district court erred as a matter of law in granting summary judgment of invalidity. We agree with Checkpoint that the 1988 declarations of Jorgenson, Pichl, and Gieges create a genuine issue of material fact on the issue of inventorship. Accordingly, we reverse the grant of summary judgment in favor of All-Tag and Sensormatic and remand the case to the district court for further proceedings consistent with this opinion.

BACKGROUND

I.

Checkpoint is a Pennsylvania corporation. Among other things, it manufactures and sells disposable, deactivatable resonance labels for the retail industry. A resonance label is a device that is attached to merchandise in department stores and

other outlets in order to prevent theft of the merchandise. The '555 patent claims a resonance label and a method of making it. All-Tag manufactures and sells resonance labels accused of infringing the '555 patent. Sensormatic purchases accused products from All-Tag.

The events leading up to the issuance of the '555 patent are relevant to the issue before us. In the 1980s, Checkpoint contracted to supply resonance labels to a Swiss corporation called Actron.[1] At that time, Franz Pichl was a managing director and an owner of Actron. In 1985, Pichl hired Lukas Geiges to work for Actron. The supply contract between Checkpoint and Actron terminated in November of 1986.

Pichl also was a part owner of another Swiss company, Durgo AG ("Durgo"). Durgo was purportedly formed to supply resonance labels to Actron. In 1987, Durgo filed a patent application for a resonance label in the Swiss Patent Office. Subsequently, in 1988, the '468 application, that would issue as the '555 patent, was filed with the U.S. Patent and Trademark Office ("PTO"), claiming priority to the Swiss application. The '468 application was assigned to Durgo and named Paul Jorgensen as the sole inventor. Jorgensen is an independent technical consultant who has provided services to, among others, Durgo, Actron, and All-Tag.

During prosecution of the '468 application, Jorgensen filed a small entity declaration. A small entity declaration, see 37 C.F.R. § 1.27, entitles the assignee to qualify for reduced PTO fees, see 35 U.S.C. § 41(h). In his declaration dated March 11, 1988, Jorgenson identified himself as an independent inventor, stating:

---

[1] Actron was originally named "Checkpoint Europe." Despite the similarity of their names, Checkpoint Europe and Checkpoint were unrelated. For simplicity, we refer to the Checkpoint Europe/Actron entity as "Actron."

> As below named inventor, I hereby declare that I qualify as an independent inventor as defined in 37 CFR 1.9(c) for purposes of paying reduced fees under 35 USC 41(a) & (b) to the U.S. Patent Office[.]

Pichl, and Geiges, who was associated with Pichl at Durgo, filed a joint small entity declaration with the PTO in connection with the prosecution of the '468 application. In their declaration, also dated March 11, 1988, they stated as follows in connection with Durgo's rights as assignee from Jorgenson:

> I hereby declare that rights under contract or law have been conveyed to and remain with the small business concern identified above with regard to the invention entitled Resonance Label by inventor Paul Richter Jorgenson[.]

Finally, the Jorgenson declaration and the Pichl and Geiges declaration both contained the following additional statement:

> I hereby declare that all statements made herein of my own knowledge are true and that all statements made on information and belief are believed to be true; and further that these statements were made with knowledge that willful false statements and the like so made are punishable by fine or imprisonment, or both, under 18 USC 1001, and that such willful false statements may jeopardize the validity of the patent application, any patent issuing thereon, or any patent to which this verified statement is directed.

In January of 1989, Actron acquired Durgo. When it did so, it also acquired Durgo's rights in the '468 application. The '555 patent issued on October 24, 1989. Thereafter, in November of 1995, Checkpoint acquired Actron. It thus became the owner of the '555 patent.

In February of 1989, after Actron had acquired Durgo, Pichl ended his relationship with the company, and in 1991 he formed All-Tag. Pichl left All-Tag in 1997 and apparently no longer has an employment relationship with the company. Geiges continued to work at Actron until November of 1993. In approximately April of 1994,

Checkpoint hired Geiges to manage its patent portfolio. Geiges remained with Checkpoint until 1998.

II.

In May of 2001, Checkpoint brought suit against All-Tag and Sensormatic in the Eastern District of Pennsylvania for infringement of the '555 patent. Eventually, All-Tag moved for summary judgment that the '555 patent is invalid under 35 U.S.C. § 102(f) for failure to properly list all inventors.[2] It argued that the patent incorrectly lists Jorgenson as the sole inventor, when in fact Jorgensen and Pichl were co-inventors. In support of the motion, All-Tag proffered declarations from Jorgensen, Pichl, and Geiges, each of which was prepared in 2002 for the litigation. In his declaration, Jorgensen stated that the resonance label that is the subject of the '555 patent "was based on the concepts and work developed by both Mr. Pichl and me." In a like vein, Pichl stated: "The resonance label disclosed in the '555 patent was based on a concept developed jointly by Paul Jorgenson and me." Pichl added that he intentionally omitted himself as a co-inventor in the U.S. patent application "to avoid any later argument by Checkpoint that it was entitled to ownership of the invention by contract, by virtue of the affiliation with [Actron] and the relationship between [Actron] and Checkpoint." Likewise, in his declaration, Geiges stated:

> Contrary to the indication on the '555 patent, Mr. Jorgensen was not the sole inventor of this subject matter. We intentionally did not include Mr. Pichl's name on the [patent application] filed in the United States because of our competitive relationship with [Checkpoint]. We were concerned that [Checkpoint] might try and claim ownership in the technology based on [Actron's] and Mr. Pichl's prior supply agreement with [Checkpoint].

---

[2] All-Tag filed the motion for summary judgment, which Sensormatic later joined.

Checkpoint opposed the summary judgment motion on several grounds. First, it argued that, under the doctrine of assignor estoppel, All-Tag was barred from challenging the patent's validity. Second, Checkpoint argued that the evidence embodied in the 2002 Jorgenson, Pichl, and Geiges declarations was not sufficiently corroborated to meet the burden of clear and convincing evidence necessary to invalidate the patent. Third, in a supplemental response to defendants' motion, Checkpoint argued that there was a genuine issue of material fact on the inventorship issue. Checkpoint did not file any contemporaneous affidavits or declarations in response to the 2002 Jorgensen, Pichl, and Geiges declarations. However, it argued that the original PTO declarations of Jorgensen, Pichl, and Geiges contradicted their 2002 litigation declarations and created a fact issue regarding whether Jorgensen was the sole inventor.

In ruling on the motions for summary judgment, the district court first addressed whether defendants were estopped from challenging the '555 patent's validity. Determining that Sensormatic was not barred by assignor estoppel, the court granted Sensormatic's motion for summary judgment. In doing so, the district court did not address whether the contradiction between the original PTO declarations and the 2002 declarations created a genuine issue of material fact. Rather, presumably referring to the 2002 declarations, the court stated that "[t]he undisputed evidence, Pichl's and Jorgensen's affidavits, clearly shows that the '555 patent was jointly invented by Pichl and Jorgensen." Checkpoint, 315 F. Supp. 2d at 665. Stating that "[i]f the patent is invalid to one, it is invalid to all," the court also granted All-Tag's motion for summary judgment of invalidity. Id. at 666.

Checkpoint has timely appealed from the final judgment of the district court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We review the district court's grant of summary judgment de novo. See Caterpillar Inc. v. Sturman Indus., 387 F.3d 1358, 1373 (Fed. Cir. 2004). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

## I.

Before examining the propriety of the district court's grant of summary judgment, we address two preliminary arguments that Checkpoint raises on appeal. First, Checkpoint argues that assignor estoppel bars All-Tag from challenging the validity of the '555 patent.[3] The doctrine of assignor estoppel prevents a party that assigns a patent to another from later challenging the validity of the assigned patent. Westinghouse Elec. & Mfg. Co. v. Formica Insulation Co., 266 U.S. 342, 349 (1924); Mentor Graphics Corp. v. Quickturn Design Sys., 150 F.3d 1374, 1377 (Fed. Cir. 1998). Parties in privity with the assignor are also barred from challenging validity. Id. Privity may be established where there is a close relationship among the relevant parties, such as where "the ultimate infringer availed itself of the inventor's knowledge and assistance

---

[3] Checkpoint does not make this argument as to Sensormatic.

04-1395          7

to conduct infringement." Intel Corp. v. United States Int'l Trade Comm'n, 946 F.2d 821, 839 (Fed. Cir. 1991) (citations omitted). The doctrine "prevents the unfairness and injustice of permitting a party to sell something and later to assert that what was sold is worthless." Id. (citation omitted). Application of the doctrine is a matter requiring a "balancing of the equities" and is within the "sound discretion" of the trial court. See Carroll Touch, Inc. v. Electro Mech. Sys., 15 F.3d 1573, 1579 (Fed. Cir. 1993).

Checkpoint contends that assignor estoppel applies to All-Tag. Checkpoint recognizes that All-Tag is not an assignor of the '555 patent. It urges, however, that All-Tag's relationship with Jorgenson brings the doctrine into play. Checkpoint reasons that Jorgenson's relationship with Pichl, and his work on behalf of All-Tag, create privity. The district court did not rule on whether assignor estoppel applies to All-Tag because, having determined that: (1) Sensormatic was not barred from challenging the '555 patent; and (2) the '555 patent was invalid, the court ruled that if a patent is "invalid to one, it is invalid to all." 315 F. Supp. 2d at 665-66. In light of our reversal of the grant of summary judgment of invalidity, see infra Part II, the issue of whether All-Tag is barred by assignor estoppel from challenging the validity of the '555 patent is once again on the table. However, we decline to rule on whether All-Tag is estopped from challenging the validity of the '555 patent. We leave this issue to the district court in the first instance on remand.

Checkpoint also argues that, in any event, Jorgenson, Pichl, and Geiges should not be allowed to testify to the invalidity of the '555 patent, and that no party should be able to rely upon their declarations or live testimony to invalidate the patent. In support of its argument, Checkpoint cites several district court decisions, e.g., Total

Containment, Inc. v. Buffalo Envtl. Prods. Corp., 35 U.S.P.Q.2d (BNA) 1385 (E.D. Va. 1995), holding that a party not barred by assignor estoppel nevertheless was precluded from using the testimony of an inventor-assignor to present its challenge to the validity of the patent.

We are not persuaded by Checkpoint's argument. We think it would be unwise to fashion an across-the-board rule barring testimony of the kind contained in the 2002 Jorgenson, Pichl, and Geiges declarations. A party, such as Sensormatic, that is not barred by assignor estoppel from challenging the validity of the patent, should be able to at least proffer all otherwise admissible evidence in support of its case. Moreover, we hold in Part II, infra, that because there is a genuine issue of material fact on the inventorship issue, the district court erred in granting summary judgment in favor of All-Tag and Sensormatic. If All-Tag and Sensormatic continue to challenge the validity of the '555 patent on inventorship grounds and the case goes to trial, counsel for Checkpoint will have the opportunity to cross-examine one or more of Jorgenson, Pichl, or Geiges and to seek to impeach them. Further, the corroboration rule, discussed infra in Part III, is available in appropriate cases to protect patentees from invalidation of their patent based solely upon uncorroborated, testimonial evidence. Checkpoint will be free to argue that the corroboration rule applies in this case and that the Jorgenson, Pichl, and Geiges testimony is insufficient under the rule.

Having addressed Checkpoint's preliminary arguments, we turn now to the main issue on appeal.

II.

"A person shall be entitled to a patent unless . . . he did not himself invent the subject matter sought to be patented." 35 U.S.C. § 102(f) (2000). We have stated that "[s]ince the word 'he' refers to the specific inventive entity named on the patent, this subsection mandates that a patent accurately list the correct inventors of the claimed invention." Pannu v. Iolab Corp., 155 F.3d 1344, 1349 (Fed. Cir. 1998) (citations omitted). Inventorship is a question of law with underlying factual issues. See, e.g., Bd. of Educ. v. Am. Bioscience, 333 F.3d 1330, 1337 (Fed. Cir. 2003). "If nonjoinder of an actual inventor is proved by clear and convincing evidence, a patent is rendered invalid." Pannu, 155 F.3d at 1349 (citations omitted). However, "[i]f a patentee can demonstrate that inventorship can be corrected as provided by [35 U.S.C. § 256], a district court must order correction of the patent, thus saving it from being rendered invalid." Id. at 1350.

Checkpoint's primary contention before us is that the district court erred in granting summary judgment in favor of defendants because, in view of the declarations submitted by Jorgensen, Pichl, and Geiges to the PTO during prosecution of the '555 patent, there is a genuine issue of material fact on the question of whether Pichl was a co-inventor with Jorgensen.

All-Tag and Sensormatic, on the other hand, argue that there are no disputed facts. They urge that the 2002 declarations of Jorgensen, Pichl, and Geiges "explain" why their declarations to the PTO during prosecution of the '555 patent listed only Jorgensen as the sole inventor. According to All-Tag and Sensormatic, because the 2002 declarations "admit" that the original PTO declarations were "false," and because

Checkpoint offered no rebuttal to this "explanation," they are entitled to summary judgment.

We agree with Checkpoint that the grant of summary judgment in favor of All-Tag and Sensormatic was improper. The matter can be put simply: defendants proffer the 2002 declarations which state that Jorgensen and Pichl are co-inventors. Checkpoint proffers the original PTO declarations which recite Jorgensen as the sole inventor. Thus, there is flatly contradictory evidence relating to the matter critical for determining whether the '555 patent is invalid under 35 U.S.C. § 102(f).

Defendants argue that we have no choice but to accept the explanation offered by Jorgensen, Pichl, and Geiges in their 2002 declarations. However, to do so would be to accept as true testimony proffered by the movant for summary judgment, when it is elementary that on summary judgment all evidence and inferences are to be drawn in the non-movant's favor. See, e.g., Anderson, 477 U.S. at 255. In their 2002 declarations, Jorgensen, Geiges, and Pichl claim that they lied to the PTO because they were concerned that Checkpoint would claim ownership of the '555 patent based upon the fact that Checkpoint had supplied resonance labels to Actron during their contractual relationship. However, the explanation proffered in the 2002 declarations for the declarations before the PTO does not negate the contradictory evidence in the 1988 declarations that Jorgensen was the sole inventor of the resonance label claimed in the '555 patent. In short, it is clear that there is a genuine issue of material fact as to whether Jorgenson was the sole inventor of the resonance label claimed in the '555 patent or whether Jorgenson and Pichl were joint inventors of the resonance label. For this reason, the district court's grant of summary judgment was improper and must be

reversed. If All-Tag and Sensormatic continue to maintain that the '555 patent is invalid under section 102(f), at trial they will have the opportunity to call Jorgenson, Pichl, and Geiges as witnesses in their effort to establish that Jorgenson and Pichl were co-inventors. In that event, counsel for Checkpoint will have the opportunity to cross-examine them.

III.

Checkpoint also argues that, regardless of whether the original PTO declarations create a genuine issue of material fact, the three 2002 declarations cannot make out a prima facie showing of invalidity under 35 U.S.C. § 102(f) by clear and convincing evidence because they are not sufficiently corroborated.

"The law has long looked with disfavor upon invalidating patents on the basis of mere testimonial evidence absent other evidence that corroborates that testimony." Finnigan Corp. v. United States Int'l Trade Comm'n, 180 F.3d 1354, 1366 (Fed. Cir. 1999). Thus, "[t]he Supreme Court recognized over one hundred years ago that testimony concerning invalidating activities can be 'unsatisfactory' due to 'the forgetfulness of witnesses, their liability to mistakes, their proneness to recollect things as the party calling them would have them recollect them, aside from the temptation to actual perjury.'" Id. (quoting The Barbed-Wire Patent, 143 U.S. 275, 284 (1892)). This "rule of reason" standard requiring corroborating evidence extends to claims by individuals purporting to be co-inventors. See Ethicon, Inc. v. U.S. Surgical Corp., 135 F.3d 1456, 1464 (Fed. Cir. 1998). Physical, documentary, or circumstantial evidence, or reliable testimony from individuals other than the alleged inventor or an interested

party, may corroborate.  See Sandt Tech., Ltd. v. Resco Metal & Plastics Corp., 264 F.3d 1344, 1350-51 (Fed. Cir. 2001); Ethicon, 135 F.3d at 1461.

As we have held in Part II, supra, summary judgment was improper because of the existence of a genuine issue of material fact.  For that reason, and because the district court has yet to rule on Checkpoint's motion for further discovery (which may shed light on Jorgenson's, Pichl's, and Geiges' potential interests in the case), we do not think it is appropriate for us to decide the corroboration issue in the first instance.

That said, if All-Tag and Sensormatic continue to maintain that the '555 patent is invalid under section 102(f), nothing in this opinion should be construed as precluding Checkpoint from renewing its corroboration argument at the appropriate time.  All-Tag and Sensormatic are seeking to invalidate an issued patent based upon testimonial evidence.  That evidence comes from three individuals (two purported co-inventors and a third party) who now declare under penalty of perjury that the declarations they submitted to the PTO in 1988, also under penalty of perjury, were false.  The unresolved question is whether Jorgenson, Pichl, and Geiges lied to the PTO in 1988 or whether they are lying to the courts now.  If it becomes necessary, it will be for the district court in the first instance to apply the corroboration rule to the facts of this case.

IV.

Finally, Checkpoint assigns error to the district court's treatment of 35 U.S.C. § 256.  Section 256 provides, in pertinent part, that "[w]henever . . .  through error an inventor is not named in an issued patent and such error arose without any deceptive intention on his part, the Director may, on application of all the parties and assignees, with proof of the facts and such other requirements as may be imposed, issue a

certificate correcting such error." The district court ruled that the '555 patent could not be corrected under section 256 because the purported inventorship error was with deceptive intent. Checkpoint, 315 F. Supp. 2d at 665.

In light of our reversal of summary judgment, the patent is no longer invalid for failure to properly name all inventors. Thus the issue of whether the patent may be corrected is obviously not before us. We simply note what we stated in Pannu: "When a party asserts invalidity under § 102(f) due to nonjoinder, a district court should first determine whether there exists clear and convincing proof that the alleged unnamed inventor was in fact a co-inventor." Pannu, 155 F.3d at 1350. Then, "[u]pon such a finding of incorrect inventorship, a patentee may invoke section 256 to save the patent from invalidity." Thus, after it is determined that a patent's inventorship is incorrect, "the patentee must then be given an opportunity to correct inventorship pursuant to that section." Id. At this point, we think that it would be premature for us to opine on an issue that may not arise.

## CONCLUSION

For the foregoing reasons, we reverse the grant of summary judgment in favor of All-Tag and Sensormatic that the '555 patent is invalid under 35 U.S.C. § 102(f). The case is remanded to the district court for further proceedings consistent with this opinion.

REVERSED and REMANDED