NOTE: This disposition is nonprecedential

# United States Court of Appeals for the Federal Circuit

---

**ALTAIR ENGINEERING, INC.,**
*Plaintiff-Appellant,*

v.

**LEDDYNAMICS, INC.,**
*Defendant-Appellee.*

---

2010-1118

---

Appeal from the United States District Court for the Eastern District of Michigan in case no. 07-CV-13150, Judge George Caram Steeh

---

DECIDED: March 9, 2011

---

THOMAS N. YOUNG, Young & Basile, P.C., Troy, Michigan, argued for plaintiff-appellant. With him on the brief was CHRISTOPHER G. DARROW.

R. BRADFORD FAWLEY, Downs, Rachlin Martin, PLLC, Brattleboro, Vermont, argued for defendant-appellee. With him on the brief was JAMIE T. GALLAGHER.

---

Before RADER, *Chief Judge*, DYK, and PROST, *Circuit Judges*.

DYK, *Circuit Judge*.

Plaintiff Altair Engineering, Inc. ("Altair") appeals the district court's judgment of non-infringement in favor of defendant LEDdynamics, Inc. ("LEDdynamics"). Altair challenges the district court's claim construction and the court's conclusion that Altair was judicially estopped from changing its position about the nature of the accused product. We affirm the district court's claim construction but reverse its determination as to judicial estoppel. We accordingly reverse the summary judgment of non-infringement.

BACKGROUND

Altair owns United States Patent No. 7,049,761 ("the '761 patent"), which discloses a light tube that uses light emitting diodes ("LEDs") to serve as a replacement for the typical fluorescent tube lights commonly used in schools and offices. On July 27, 2007, Altair sued LEDdynamics in the United States District Court for the Eastern District of Michigan, ultimately alleging that an LED-based light tube produced by LEDdynamics infringed independent claim 3 and dependent claims 4, 16 and 17 of the '761 patent.

The district court held a *Markman* hearing on July 31, 2008, during which the only disputed term was "closely-spaced" in claim 3. Claim 3 provides:

In a replacement light tube for a fluorescent light fixture having a light tube socket and a power supply circuit, the improvement comprising:

a *plurality of closely-spaced light emitting diodes* disposed inside a bulb portion of the light tube

and in electrical communication with a pair of end caps coupled to opposed ends of the bulb portion and engageable with the light tube socket, the plurality of light emitting diodes operable to illuminate in response to electrical current delivered by the fluorescent light [fixture]; and wherein each of the pair of end caps is an electrical bi-pin connector.

'761 Patent, col. 6 ll. 14–26 (emphasis added).

At the *Markman* hearing, LEDdynamics argued that the proper construction for "closely-spaced" was: "[N]ot spaced-apart, such that adjacent LEDs are sufficiently close that another LED cannot fit in the space therebetween." J.A. 114. Altair, conversely, suggested that the correct construction was: "[M]ultiple LEDs arranged inside of a bulb portion where the number and spacing of the LEDs is such that, when lighted, the LEDs produce an illumination level and effect which adequately performs as a fluorescent light tube substitute." J.A. 103. The district court adopted LEDdynamics construction, finding that it was supported by the figures in the specification and prosecution history and would prevent the claim from being invalidated as indefinite.

After the *Markman* proceedings, LEDdynamics moved for summary judgment of non-infringement. Throughout its *Markman* briefing, Altair had characterized the accused product as containing 36 LEDs. Under the district court's claim construction, these 36 LEDs were "spaced-apart, such that adjacent LEDs are sufficiently close that another LED cannot fit in the space therebetween." Thus, treating the accused product as consisting of 36 LEDs, it did not infringe. In opposing the motion, Altair for the first time relied on its assertion that the 36 LEDs in the accused product were "actually packages of six LEDs

arranged very close to one another" and that the product, therefore, had 216 LEDs which were "closely-spaced."[1] J.A. 128. Altair also moved to amend its infringement contentions to add new claims of the '761 patent that it believed were infringed.

The district court found Altair was judicially estopped from arguing that the accused product contained 216 closely-spaced LEDs because (1) its "new argument . . . is clearly at odds with its consistent position during the Markman proceedings," (2) "this Court adopted Altair's definition of LEDs in the accused device," and (3) "[c]hanging the definition of LED now . . . would prejudice LED dynamics." *Altair Eng'g, Inc. v. LEDdynamics, Inc.*, No. 07-CV-13150, slip op. at 5–7 (E.D. Mich. March 24, 2009). The district court also denied Altair's motion to add additional claims, finding that Altair lacked good cause to amend infringement contentions made in response to the court's scheduling order (an issue not raised on appeal). To allow for a final judgment to be entered so the case could be appealed, LEDdynamics withdrew its invalidity counterclaims. Altair timely appealed the summary judgment of non-infringement. We have jurisdiction over Altair's appeal pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

Altair challenges the district court's claim construction and its holding as to judicial estoppel. Claim construction is an issue of law that we review de novo. *Key Pharm. v. Hercon Labs. Corp.*, 161 F.3d 709, 713 (Fed. Cir. 1998). Because judicial estoppel is not an issue

---

[1] Altair did tell the court during the Markman hearing that it had "discovered that the [LEDs used in the accused product] are actually six small LED chips wired together." J.A. 744.

unique to patent law, we look to the law of the applicable regional circuit, which here is the Sixth Circuit. *See Biomedical Patent Mgmt. Corp. v. California Dep't of Health Servs.*, 505 F.3d 1328, 1341 (Fed. Cir. 2007). The Sixth Circuit reviews a district court's use of judicial estoppel de novo. *Browning v. Levy*, 283 F.3d 761, 775 (6th Cir. 2002).

I

With respect to claim construction, the parties agree that the text of the specification does not define or even use the phrase "closely-spaced" and that the phrase has no accepted meaning in the relevant art. Altair asserts that the district court erred by relying on the figures in the specification to arrive at its definition of "closely-spaced," and that its proposed claim construction is consistent with the purpose of the invention, which was "to provide a light tube . . . which overcome[s] the short-comings of conventional fluorescent lighting systems" (i.e., a substitute for conventional fluorescent tube lighting). *See* '761 Patent, col. 1, ll. 30–32. However, as the district court noted, the term "closely-spaced" appears to refer to spatial separation, not to the functionality of the invention. While we agree that the figures in the specification in and of themselves do not define "closely-spaced," the prosecution history makes clear that the district court's construction is correct.

Claim 3 was originally drafted without the "closely-spaced" limitation, and Altair inserted the limitation during prosecution to distinguish its invention from prior art U.S. Patent No. 4,748,545 (the "Schmitt patent"). The Schmitt patent discloses a cabinet display light, which is long and tubular and contains three incandescent or halogen lamps that are "spaced-apart," *see, e.g.*, Schmitt patent, col. 5, l. 29, in order to create "point light sources"

to concentrate on the items on display, *id.* at col. 1, l.25. The light sources in the Schmitt patent allow an intervening light source of the same type to be placed in between each light.

When adding the closely-spaced limitation to its claim, Altair argued to the examiner that "Schmitt does not teach or suggest a plurality of *closely-spaced* [LEDs] extending between the opposite ends of the bulb portion, which is *shown by example in Applicants' Figures 1 and 2. A critical feature of Schmitt is the existence of spaced-apart* light sources . . . ." J.A. 296 (emphases added). Here, not only did Altair admit that the limitation was added to distinguish the claim from "spaced apart" light sources, but it also relied explicitly (and heavily) on the figures to explain what it meant by "closely-spaced." Both figures 1 and 2 show LEDs arranged in banks of three such that each LED nearly touches another LED. In other words, it appears that another LED could not be placed in the space between LEDs. Figure 2 (in which the LEDs are labeled 22) is set forth below:



Fig. 2

'761 Patent fig.2. Although patentees are, of course, not limited to a single preferred embodiment as disclosed in the figures, here the patentee specifically referenced the figures displaying its preferred embodiment when explaining what it meant by "closely-spaced." Altair distinguished the Schmitt patent by adding "closely-spaced" and in describing the claim term made explicit reference to figures that show LEDs practically touching across the entire tube. The fact that the Schmitt patent could also have been distinguished on some other ground (i.e., that it does not use LEDs) is irrelevant. *See, e.g., Andersen Corp v. Fiber Composites, LLC*, 474 F.3d 1361, 1374 (Fed. Cir. 2007) ("[A]n applicant's argument that a prior art reference is distinguishable on a particular ground can serve

as a disclaimer of claim scope even if the applicant distinguishes the reference on other grounds as well.").

Despite Altair's claims to the contrary, other aspects of the prosecution history also support the district court's construction. Altair argues that the examiner rejected a proposed claim of the '761 patent that included the term "closely-spaced" based on U.S. Patent No. 6,394,623 (the "Tsui patent") even though the light sources in the Tsui patent apparently were spaced far enough apart that another light could be placed in between. Therefore, according to Altair, the examiner must have interpreted "closely-spaced" as not requiring that other lights could not be placed in between.

While the examiner's interpretation can be pertinent, the applicant's own interpretation has far more significance. *See, e.g.*, *Springs Window Fashions LP v. Novo Indus., LP*, 323 F.3d 989, 995 (Fed. Cir. 2003) (focusing on applicant's statements distinguishing prior art during prosecution despite the fact that examiner may not have relied on those statements and, instead, had a different reason for allowance); *Spectrum Int'l, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1378–79 (Fed. Cir. 1998) (noting that "explicit arguments made [by the applicant] during prosecution" are significant and that "by distinguishing the claimed invention over the prior art, an applicant is indicating what the claims do not cover"). Here, Altair itself distinguished the Tsui patent by stating to the examiner that "Tsui fails to teach or suggest a plurality of closely-spaced [LEDs] disposed inside the bulb portion" and instead "teaches a plurality of spaced-apart lights." J.A. 341. Altair pointed out to the examiner the fact that the Tsui patent explicitly discloses "spaced-apart lights." *E.g.*, Tsui patent, col. 6, l.22. Therefore, Altair clearly urged that, in contrast to its patent, the lights in the Tsui patent (which allowed a light to be placed in the interven-

ing space) were not closely-spaced. Altair's interpretation during prosecution is highly significant.

Altair also argues that the examiner rejected a proposed claim that included the "closely-spaced" limitation as anticipated by U.S. Patent No. 6,325,651 (the "Nishihara patent") and that rejection must have assumed that the lights in Nishihara are "closely-spaced." The figures from the Nishihara patent show that the incandescent lights disclosed in that patent are much larger than LEDs and, despite being several inches apart, are still close enough to each other that another incandescent light of the same size could not be placed between the lights. *See* Nishihara patent, fig.7. Therefore, the examiner's rejection based on the Nishihara patent actually supports the district court's claim construction of "sufficiently close that another [of the same type of light] cannot fit in the space therebetween."

Therefore, we hold that the figures and prosecution history support the district court's claim construction. The proper construction was "not spaced-apart, such that adjacent LEDs are sufficiently close that another LED cannot fit in the space therebetween."

## II

With respect to judicial estoppel, Altair argues that the issue of the nature of the accused product was never contested, and it never prevailed on the definition of LED. Under these circumstances, it asserts that it cannot be estopped from changing its characterization of the accused product. We agree. In *New Hampshire v. Maine*, 532 U.S. 742, 750–51 (2001), the Supreme Court described three factors used to determine whether judicial estoppel should apply:

> First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled. . . . A third consideration is whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.

*Id.* (internal citations and quotations omitted). The Court explained that judicial estoppel "prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *Id.* at 749 (quoting *Pegram v. Herdrich*, 530 U.S. 211, 227 n.8 (2000)). Here, Altair did not prevail in any phase of the case. In fact, Altair lost its argument on claim construction. The district court rejected Altair's proposed construction and accepted the one proposed by LEDdynamics. Whether the accused product contained 36 or 216 LEDs was never even a contested issue. Indeed, at oral argument, LEDdynamics conceded that Altair "did not prevail on anything substantive." Oral Arg. at 16:04–16:07, *available at* http://www.cafc.uscourts.gov/oral-argument-recordings/2010-1118/all. Therefore, application of judicial estoppel was improper.

Altair's new evidence regarding the grouping of LEDs in the accused product raises a substantial issue of material fact. With LEDdynamics' motion for summary judgment, it submitted an affidavit from William McGrath stating that the accused product contained "36 LEDs" spaced "approximately 1.25 inches apart." J.A. 123. Altair submitted an affidavit along with its reply from

John Ivey, asserting that, after magnifying the image of the accused device, he found each of the 36 devices "actually consists of a grouping of six LEDs arranged [such that] . . . [t]he six LEDs in each grouping are too close to one another to allow an LED to be fit between them." J.A. 133. Although Ivey's affidavit differs from his prior declaration that the LEDs on the accused product "were a little over one inch apart," the change in position does not preclude finding a material issue of fact. *See Checkpoint Sys., Inc. v. All Tag Sec. S.A.*, 412 F.3d 1331, 1338 (Fed. Cir. 2005) (finding issue of material fact where content of witness declarations differed from prior declarations given to Patent and Trademark Office). Therefore, the district court erred in granting LEDdynamics' motion for summary judgment of non-infringement. While Altair may not ultimately prevail in its infringement suit based on its new characterization of the accused product, it is at least entitled to try.

## III

We thus affirm the district court's claim construction of the term "closely-spaced" but reverse the district court's summary judgment of non-infringement.[2]

---

[2] LEDdynamics argues on appeal that claim 3 of the '761 patent should be invalidated for indefiniteness or lack of written description. Its invalidity counterclaims were dismissed by the district court without prejudice. LEDdynamics did not file a cross-appeal. Even if the dismissal without prejudice were not a bar to its invalidity claims on appeal, LEDdynamics cannot seek invalidity of the '761 patent in the absence of a cross-appeal. *See Typeright Keyboard Corp. v. Microsoft Corp.*, 374 F.3d 1151, 1157 n.4 (Fed. Cir. 2004) ("[W]here the appellee urges invalidity as a new ground on which to support a judgment of non-infringement . . . a cross-appeal is necessary . . . .").

## AFFIRMED-IN-PART, REVERSED-IN-PART, and REMANDED

### Costs

No costs.