# United States Court of Appeals for the Federal Circuit

2006-1062


MBO LABORATORIES, INC.,

Plaintiff-Appellant,

v.

BECTON, DICKINSON & COMPANY,

Defendant-Appellee.


John M. Skenyon, Fish & Richardson P.C., of Boston, Massachusetts, argued for plantiff-appellant.

Richard J. Oparil, Patton Boggs LLP, of Washington, DC, argued for defendant-appellee. With him on the brief were Marc R. Labgold and Kevin M. Bell, of McLean, Virginia.

Appealed from: United States District Court for the District of Massachusetts

Judge Reginald C. Lindsay

# United States Court of Appeals for the Federal Circuit

2006-1062

MBO LABORATORIES, INC.,

Plaintiff-Appellant,

v.

BECTON, DICKINSON & COMPANY,

Defendant-Appellee.

_____

DECIDED: January 24, 2007

_____

Before BRYSON, Circuit Judge, CLEVENGER, Senior Circuit Judge, and GAJARSA, Circuit Judge.

GAJARSA, Circuit Judge.

This appeal arises under the patent laws. Plaintiff MBO Laboratories, Inc. ("MBO") appeals a summary judgment of noninfringement of U.S. Patent No. RE 36,885 ("the RE '885 patent") granted by the United States District Court for the District of Massachusetts. After conducting a Markman hearing, the district court construed the various disputed claim terms. MBO Labs. v. Becton, Dickinson, & Co., 385 F. Supp. 2d 88 (D. Mass. 2005). MBO conceded that under the district court's claim construction there was no infringement of the patent claims. The district court therefore granted summary judgment in favor of defendant Becton, Dickinson & Company ("Becton"). MBO timely appealed the claim construction to this court.

For the reasons given below, we affirm the district court's construction of the disputed term "immediately" except as that construction affects claims 32 and 33, and we reverse as to "slidably receiving," "relative movement," "adjacent," "proximity," and "mounted on said body," and remand for further proceedings consistent with this opinion.

## I.  BACKGROUND

A.  <u>The technology</u>

The RE '885 patent is directed generally to a design for a hypodermic safety syringe. The patented invention, the accused device, and relevant prior art syringes all include features intended to protect health care workers and bystanders from inadvertent needle sticks following an injection or drawing of fluid. This largely involves ensuring that the contaminated parts of the cannula or needle, especially the sharp point at the end of the cannula that enters the body, are covered in some manner soon after removal from the patient.

MBO's syringe is described in detail in the patent, but it is essentially structured by having the needle or cannula mounted inside a guard sleeve. The needle's sharp end protrudes through a hole in the front of the guard, permitting it to be inserted into the patient. When the needle is removed from the patient, the health care worker slides the needle backwards relative to the guard. A "blocking flange" is mounted on the guard and held in spring tension against the needle. When the needle's point slides behind this flange, the flange moves vertically in relation to the guard, covering the tip of the needle and preventing it from being inadvertently re-exposed. The needle's tip is covered by the flange and the rest of the contaminated needle is sheathed inside the

guard. Once the flange is activated, the needle is encapsulated by the guard sleeve and rendered safe.

B.      Prosecution history

The RE '885 patent has a complex prosecution history which will be described here in some detail. The first patent application covering MBO's invention[1] was issued in January 1993 as U.S. Patent No. 5,176,655 ("the '655 patent"). Prior to the issuance of the '655 patent, MBO filed two continuation applications claiming priority to the original application: a continuation-in-part application, issued in March 1995 as U.S. Patent No. 5,395,347 ("the '347 patent"), and a continuation application, ultimately issued in May 1998 as U.S. Patent No. 5,755,699 ("the '699 patent"). MBO subsequently requested a broadening reissue of the '699 patent pursuant to 35 U.S.C. § 251, which was granted in September 2000 as U.S. Patent No. RE 36,885. The RE '885 patent is the only one asserted in this litigation, but the entire prosecution history of its relatives is relevant to the claim construction analysis. See Microsoft Corp. v. Multi-Tech Sys., 357 F.3d 1340, 1349-50 (Fed. Cir. 2004).

In the application that culminated in the original '655 patent, the first office action rejected all the claims as anticipated or obvious in view of U.S. Patent No. 4,943,281, issued to Kothe. MBO then amended the claims by adding additional limitations. It distinguished the invention from the prior art by noting that MBO's invention was capable of "precluding the inadvertent reemergence [of the needle]." Reply Letter to

---

[1]      Inventions are created by individuals, not corporations, see Beech Aircraft Corp. v. Edo Corp., 990 F.2d 1237, 1248 (Fed. Cir. 1993), but for simplicity we will use "MBO" as shorthand for "the inventors who assigned their patents to MBO" throughout our discussion of the patents' history.

Finkel, Examiner, In the Patent Application of McCormick et al., S/N 07/610,583, at 5 (Sept. 12, 1991).

The examiner rejected the claims again based on prior art: namely, U.S. Patent Nos. 4,915,697, 4,887,998, and 4,917,672, issued respectively to du Pont, Martin, and Terndrup. Following an interview with the examiner, MBO narrowed its claims in this first application significantly to include specific features found on its syringe product, such as "flexible wing-like sections," which flex to allow or preclude relative movement between the needle and guard, as needed. MBO also amended some, but not all, of its independent claims to require "shield means . . . for automatically precluding" the needle from coming back out or being accessed. Reply Letter to Stright, Examiner, In the Patent Application of McCormick et al., S/N 07/610,583, at 2-3 (July 17, 1992). As it had before, MBO differentiated the three cited prior art patents for failing to prevent the re-emergence of the needle. Id. at 7-8. MBO additionally differentiated the du Pont reference as lacking "the automatic and immediate safety means of the present invention." Id. at 7. After these specific amendments, the application issued as the '655 patent.

Before the '655 patent issued, MBO filed a continuation-in-part application claiming priority from the first application. The examiner rejected all claims in this application as obvious in view of prior art U.S. Patent No. 5,026,356, issued to Smith. The Smith patent discloses a safety syringe with a side-mounted guard that snaps down and over the tip of the needle. MBO amended its claims to distinguish from Smith on the basis that its needle guard fully surrounded the needle as opposed to only covering the "tip of the point," and also that the needle in Smith "may be fully withdrawn from the

patient's flesh by an inattentive or rushed operator in [the unsafe] state . . . !" Reply Letter to Alexander, Examiner, In the Patent Application of Blecher et al., S/N 07/972,013, at 8 (Nov. 15, 1993) (emphasis in original). The examiner once again rejected certain claims as unpatentable over other prior art. MBO distinguished the additional references on the grounds that its blocking flange moved into "adjacent relation" to the front of the guard, unlike any of the cited art. Reply Letter to Alexander, in the Patent Application of Blecher et al., S/N 07/972,013, at 2 (June 3, 1994). After this argument, the examiner allowed the claims and the continuation-in-part application issued as the '347 patent.

The next stage in the prosecution of this invention was a continuation application also claiming priority to the original application. The examiner rejected the new claims as anticipated by U.S. Patent No. 4,850,977, issued to Bayless, or as obvious in view of Bayless and Smith, supra. Bayless discloses a safety needle with a spring-loaded sheath that, when manually triggered, extends out and then closes over the exposed needle tip. MBO distinguished its invention from Bayless on three grounds: 1) MBO's invention included "a [guard] body . . . for slidably receiving a needle," 2) MBO's invention included a safety flange that engages "when the needle is slidably retracted" into the body, and 3) the safety flange is mounted to keep it from sliding up or down the guard body. Reply Letter to Alexander, Examiner, In the Patent Application of Blecher et al., S/N 08/398,772, at 5 (May 17, 1996). The examiner then allowed the claims. MBO abandoned this application and filed a new continuation with additional claims. This last application issued as the '699 patent in May 1998.

After issuance of the '699 patent, MBO sought a broadening reissue pursuant to 35 U.S.C. § 251 in July 1999. In its reissue application, it argued the claims of the '699 patent were narrow and that it had a right to broader claims. Specifically, it noted that it was entitled to claim a system having "any relative movement between the needle and the body," not just a "system wherein the needle must be bodily moved toward the safety device." The PTO allowed the reissue application without objection, and the RE '885 patent issued in September 2000.

C.    Prior proceedings

MBO filed suit against Becton in the United States District Court for the District of Massachusetts, asserting infringement of claims 13, 19, 20, 27, 28, 32, and 33 of the RE '885 patent. MBO, 385 F. Supp. 2d at 91. Claims 13, 19, and 20 were original to the '699 patent; claims 27, 28, 32, and 33 were added during the reissue process. Id. at 103. The district court conducted a hearing to construe the claims pursuant to Markman v. Westview Instruments, Inc., 52 F.3d 967 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996). Several claim terms were disputed by the parties, namely: "immediately," "relative movement," "slidably receiving," "adjacent," "proximity," and "mounted on said body." The district court's Markman order covers each of these terms.

The term "immediately" appears in the preamble of claims 13, 19, and 27: "A method of immediately and positively precluding needlestick injury from a contaminated needle comprising the steps of . . . ." RE '885 patent col.10 ll.24-26, col.12 ll.34-36, col.15 ll.5-7. The district court determined that the preamble limited these claims. MBO, 385 F. Supp. 2d at 105. It construed "immediately" to mean "simultaneously with the needle's withdrawal from the donor." Id. at 106. It also determined that this

simultaneity requirement limited claim 32 and its dependent 33, in which the word "immediately" does not appear. Id.; RE '885 patent col.16 ll.23-53.

At least one of the terms "relatively moved" and "slidably receiving" appears in each asserted claim. The two terms describe the same concept: the manner in which the needle and guard move with respect to each other. The district court concluded that these terms were limited to embodiments in which the needle moves backward relative to a stationary guard, and excluded from the claims' scope those embodiments in which the guard moves forward relative to a stationary needle. MBO, 385 F. Supp. 2d at 108.

The term "adjacent" describes the location of the blocking flange relative to the front surface of the guard when the needle is in use. RE '885 patent col.10 l.36, col.12 l.47, col.15 l.18. The district court construed it to require the flange be "contiguous or connected with the front surface of the body." MBO, 385 F. Supp. 2d at 109.

The terms "proximity" and "immediate proximity" refer to the location of the needle tip relative to the front opening of the guard at the moment the blocking flange is released to spring up and cover the needle tip. RE '885 patent col.12 l.52, col.15 l.23. The district court construed these terms to require that the needle tip be "flush with" the front of the body when the blocking flange is released. MBO, 385 F. Supp. 2d at 111.

The final disputed term, "mounted on said body," relates to the manner in which the blocking flange assembly is connected to the guard body. RE '885 patent col.16 l.38. The district court limited this term to require that the flange be "attached to the exterior surface of the body." MBO, 385 F. Supp. 2d at 113.

Based on this claim construction, MBO agreed that the Becton product would not infringe the RE '885 patent and did not contest Becton's motion for summary judgment

of noninfringement. MBO appeals the judgment and challenges the claim construction by the district court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## II. DISCUSSION

### A. Standard of Review

A determination of patent infringement requires a two-step analysis: first, the meaning of the claim language is construed, then the facts are applied to determine if the accused device falls within the scope of the claims as interpreted. Markman, 52 F.3d at 976. Only the first step is at issue here, since the parties agree that there is no infringement if the district court's construction is correct. We review the district court's claim construction de novo. Cybor Corp. v. FAS Techs., Inc., 138 F.3d 1448, 1456 (Fed. Cir. 1998) (en banc). Ascertaining the meaning of the claims requires that they be viewed in the context of "those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean." Phillips v. AWH Corp., 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc) (quoting Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111 (Fed. Cir. 2004)). Phillips teaches that different weights are to be placed on these sources. The most relevant source is the patent's specification, which is "the single best guide to the meaning of a disputed term." Id. at 1315 (quoting Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996)). Next in importance is the prosecution history, which is also part of the "intrinsic evidence" that directly reflects how the patentee has characterized the invention. Id. at 1317. Extrinsic evidence—testimony, dictionaries, learned treatises, or other material not part of the public record associated with the patent—may be helpful but is "less significant than the intrinsic record in determining the legally operative

meaning of claim language." Id. (quoting C.R. Bard, Inc. v. U.S. Surgical Corp., 388 F.3d 858, 862 (Fed. Cir. 2004)). The words of patent claims have the meaning and scope with which they are used in the specification and the prosecution history. Multiform Dessicants, Inc. v. Medzam, 133 F.3d 1473, 1478 (Fed. Cir. 1998).

B.    The Term "Immediately"

As noted above, the district court construed "immediately" to require the activation of the blocking flange simultaneously with removal from the patient. The court decided that this term imposed a limitation upon claims where it appeared in the preamble, as well as upon two claims where it did not literally appear. We agree with each of these conclusions.

In this case, both the RE '885 patent's specification and prosecution history clearly indicate that the invention is focused on ensuring the protection of the healthcare worker, patient, and bystanders by safely covering the needle at once upon removal from the patient. The "Summary of the Invention" section of the RE '885 patent is particularly instructive:

> The present invention addresses [the needlestick hazard] problem confronting the healthcare industry and is designed specifically to eliminate needlestick injuries of the type described in connection with blood collection. To this end, there is provided a new and improved system which . . . shields the blood-contaminated needle simultaneously with its removal from the donor . . . whereby the probability of an exposed contaminated point being in any injury-causing proximity to a medical worker is virtually nil . . . .

RE '885 patent, col.2 ll.52-62 (emphasis added). The summary is of course not wholly dispositive. See Rambus Inc. v. Infineon Techs. AG, 318 F.3d 1081, 1094 (Fed. Cir. 2003) ("While clear language characterizing 'the present invention' may limit the ordinary meaning of claim terms, such language must be read in context of the entire

2006-1062                                    9

specification and the prosecution history." (internal citations omitted)). There is nothing in the RE '885 patent specification, though, that speaks to the needle being rendered safe at any time other than the moment of removal from the patient. Furthermore, the prosecution history provides additional support for the district court's conclusion. During prosecution of the related '347 patent, the examiner rejected MBO's application in view of U.S. Patent No. 5,026,356, issued to Smith. In response, MBO distinguished its invention from and criticized the Smith patent:

> Please note that in Smith . . . the needle 60 <u>may</u> be fully withdrawn from the patient's flesh by an inattentive or rushed operator in <u>exactly</u> the [unsafe] state, with the needle point and needle end portion fully exposed and hazardous for needlestick and contamination! It is required in Smith as a specific manipulative effort that the operator personally bodily move the [needle guard] forward . . . which may be overlooked in rushed or harried treatment conditions . . . .

Reply Letter to Alexander, Examiner, In the Patent Application of Blecher et al., S.N. 07/972,013, at 8 (Nov. 15, 1993). The clear implication is that the MBO invention, in contrast to Smith, does provide assurance that the needle will be made instantly safe upon withdrawal from the patient. Prosecution arguments like this one which draw distinctions between the patented invention and the prior art are useful for determining whether the patentee intended to surrender territory, since they indicate in the inventor's own words what the invention is not. See Medtronic, Inc. v. Guidant Corp., 465 F.3d 1360, 1373 (Fed. Cir. 2006) ("A surrender can occur by argument as well as by amendment.").

The patentee here has clearly indicated via the specification and the prosecution history that the invention provides, as an essential feature, immediate needle safety upon removal from the patient. It is therefore appropriate to construe the claims so as to ensure that they, too, require that feature. The construction of the term "immediately"

to mean "simultaneously with the needle's withdrawal from the patient" is correct. Where that term appears in a claim preamble, it is "necessary to give life, meaning, and vitality to the claim," and may be used as a limitation. Pitney Bowes, Inc. v. Hewlett-Packard Co., 182 F.3d 1298, 1305 (Fed. Cir. 1999) (quotation marks omitted).

Reissue claims 32 and 33 do not contain the word "immediately," but the district court nonetheless used its construction of that term to limit the claims. We sympathize with the district court's choice, since we agree that safety at once upon removal from the patient is an essential element of the invention as described by MBO. However, we cannot endorse a construction analysis that does not identify "a textual reference in the actual language of the claim with which to associate a proffered claim construction." Johnson Worldwide Assocs., Inc. v. Zebco Corp., 175 F.3d 985, 990 (Fed. Cir. 1999); see also Renishaw PLC v. Marposs S.p.A., 158 F.3d 1243, 1248 (Fed. Cir. 1998) ("[I]t is manifest that a claim must explicitly recite a term in need of definition before a definition may enter the claim from the written description."); E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co., 849 F.2d 1430, 1433 (Fed. Cir. 1988) (finding it improper to impose "a limitation read into a claim from the specification wholly apart from any need to interpret what the patentee meant by particular words or phrases in the claim").

In this case, we are reviewing only certain disputed terms of the claim construction and lack the power to construe other terms not disputed by the parties. None of the disputed terms that are found in claims 32 or 33 can reasonably be

construed to impose the simultaneous-safety requirement upon those claims. The district court's grafting of the "immediately" limitation into claims 32 and 33 is error.[2]

C.    The Terms "Relative Movement" and "Slidably Receiving"

MBO's primary reason for seeking reissue of the '699 patent was that its claims could be interpreted to cover only backwards movement—"retraction"—of the needle into a stationary guard, and not the essentially equivalent act of pushing the guard forward while holding the needle still. It requested the PTO to permit a broadening of the claims, replacing the term "retraction" with "relative movement" in order to more clearly capture embodiments where the guard sleeve was moved forward. The PTO allowed the reissue without objection. The district court nonetheless limited the claims to "retraction," negating the expansion of claim scope permitted by the PTO. Its decision to do so was in part driven by the recapture rule. MBO, 385 F. Supp. 2d at 103-04 (citing N. Am. Container v. Plastipak Packaging, Inc., 415 F.3d 1335 (Fed. Cir. 2005)).

The recapture rule is a limitation on the ability of patentees to broaden their patents after issuance. Inventors may seek reissuance of their patent under 35 U.S.C. § 251, as MBO did here. If the reissue application is filed within two years of the patent's initial issuance and the patentee "through error without any deceptive intention . . . claim[ed] . . . less than he had a right to," the reissue patent's claims may be broader than the original patent's claims. Id. Section 251 is "remedial in nature, based on fundamental principles of equity and fairness, and should be construed liberally." In re Weiler, 790 F.2d 1576, 1579 (Fed. Cir. 1986). However, the remedial function of the

---

[2]    We express no view on whether claims 32 and 33 as construed would invoke the recapture rule.

statute is limited.  Material which has been surrendered in order to obtain issuance cannot be reclaimed via section 251: "deliberate withdrawal or amendment cannot be said to involve the inadvertence or mistake contemplated by 35 U.S.C. § 251."  In re Clement, 131 F.3d 1464, 1468 (Fed. Cir. 1997) (quoting Haliczer v. United States, 356 F.2d 541, 545 (Ct. Cl. 1966)).  It is critical to avoid allowing surrendered matter to creep back into the issued patent, since competitors and the public are on notice of the surrender and may have come to rely on the consequent limitations on claim scope. See Vectra Fitness, Inc. v. TNWK Corp., 162 F.3d 1379, 1384 (Fed. Cir. 1998) ("[T]he recapture rule . . . ensur[es] the ability of the public to rely on a patent's public record.").  The public's reliance interest provides a justification for the recapture rule that is independent of the likelihood that the surrendered territory was already covered by prior art or otherwise unpatentable.  The recapture rule thus serves the same policy as does the doctrine of prosecution history estoppel: both operate, albeit in different ways, to prevent a patentee from encroaching back into territory that had previously been committed to the public.

In operation, the recapture rule excludes earlier deliberate withdrawals and amendments from the allowable scope of a reissue patent.  "Under the recapture rule, claims that are broader than the original patent claims in a manner directly pertinent to the subject matter surrendered during prosecution are impermissible."  Hester Indus., Inc. v. Stein, Inc., 142 F.3d 1472, 1480 (Fed. Cir. 1998).  We described in depth the required analysis in a recapture case in In re Clement, 131 F.3d at 1468-70.  First, the original and reissued claims are construed to ascertain "whether and in what aspect the reissue claims are broader than the patent claims."  Id. at 1468.  If the reissue claims

are broader in some way, the court must determine "whether the broader aspects of the reissue claims relate to the surrendered subject matter." Id. at 1468-69. This is accomplished by reviewing the prosecution history to determine what has been surrendered and determining whether the additional coverage of the reissue claim reads on the surrendered matter. Id. at 1469-70. If it does, the recapture rule bars the claim. Id. at 1470.

We believe that the district court erred in the first instance by applying the recapture rule to rewrite the claims, essentially unmaking the change that the PTO had permitted. Claim construction should not, of course, be blind to validity issues: "claims should be so construed, if possible, as to sustain their validity." Rhine v. Casio, Inc., 183 F.3d 1342, 1345 (Fed. Cir. 1999). A claim that is interpreted too broadly will run into validity issues, providing motivation for the construing court to choose a narrower interpretation if possible. However, validity construction should be used as a last resort, not a first principle: "we have limited the maxim [that claims are to be construed to preserve validity] to cases in which the court concludes, after applying all the available tools of claim construction, that the claim is still ambiguous." Phillips, 415 F.3d at 1327 (quotation marks omitted). Construction of the claims here is not so difficult a problem as to require resort to the validity maxim.

MBO clearly sought in reissue to broaden the scope of its patent coverage by rewriting its claims to cover all relative movement, not just retraction. That broadening was the explicitly stated purpose of the reissue application. Application for Reissue of U.S. Patent No. 5,755,699, Reissue Declaration of Blecher et al. at 2 (July 1, 1999) (original claims "claim less than we had a right to claim in that they fail to claim clearly

that any relative movement . . . will achieve the desired result of preventing needlestick hazard, whether or not the needle moves toward the body and connected safety device"). In light of these clear statements in the prosecution history of the RE '885 patent, we are compelled to give effect to MBO's stated intent to broaden the coverage of its claims. Whether those broadened claims are invalidated by the recapture rule is an issue separate from construction. In the narrowly limited appellate posture of this case, only the question of infringement, not validity, is before us.[3]

All of the disputed method claims, both original and reissued, refer to "providing a body slidably receiving the needle." The district court construed that phrase as referring to "a stationary body into which the movable needle retracts." We disagree with that construction. In our view, the term refers to the physical relationship between the guard body and the needle, such that the guard body is capable of sliding relative to the needle. That construction of "slidably receiving" is dictated in part by the embodiment depicted in Figures 3 and 4 of the RE '885 patent; those figures show the needle extending forward, not retracting backwards, relative to the guard body. See RE '885 patent col.6 ll.25-32. Therefore, we find that the terms "relatively moved," "slidably receiving," and their cognates permit the needle and guard to slide in any manner.

---

[3] This is not to say that the recapture rule may never properly factor into claim construction. In a case where the available techniques of construction yield two possible interpretations of a reissue claim, only one of which includes previously surrendered matter, it would be correct to resolve the ambiguity by selecting the interpretation not barred by the recapture rule.

D.    The Term "Adjacent"

We disagree with the requirement imposed by the district court that the blocking flange be "contiguous or connected" with the front face of the guard body. "[A] claim interpretation that excludes a preferred embodiment from the scope of the claim is rarely, if ever, correct." On-Line Techs., Inc. v. Bodenseewerk Perkin-Elmer GmbH, 386 F.3d 1133, 1138 (Fed. Cir. 2004) (quotation marks omitted). Two different preferred embodiments, depicted by Figure 4 of the '655 patent and Figure 9A of the RE '885 patent, clearly show the blocking flange resting somewhat in front of the front surface and not in any way "contiguous or connected" with it. The proper construction of this term is "next to."

E.    The Term "Proximity"

Again, we believe that the specification as delineated by the figures cited above renders the district court's construction—requiring that the needle be "flush with" the front of the guard when the flange activates—too narrow. In the embodiments designated by each figure, the blocking flange rests against the needle closely in front of, but not exactly at, the front of the guard body. As the needle moves, it will reach a point where it still protrudes from the front of the guard but is already clear of the blocking flange. The flange will therefore activate slightly but definitely before the needle submerges fully into the guard body and has its tip flush with the front; therefore, the district court's construction impermissibly excludes these embodiments. The proper construction of this term is "near."

F.     The Term "Mounted on Said Body"

The district court found that where the term "mounted on said body" appears, the mounting must be on the body's exterior. There is no reason to so limit the patent's scope. The patent figures all depict the flange connected mainly to the outside, but patent coverage is not necessarily limited to inventions that look like the ones in the figures. See, e.g., Gart v. Logitech, Inc., 254 F.3d 1334, 1342 (Fed. Cir. 2001) ("These drawings are not meant to represent 'the' invention or to limit the scope of coverage defined by the words used in the claims themselves."). To hold otherwise would be to import limitations onto the claim from the specification, which is fraught with "danger." Phillips, 415 F.3d at 1323; see also Comark Commc'ns, Inc. v. Harris Corp., 156 F.3d 1182, 1186 (Fed. Cir. 1998) ("We recognize that there is sometimes a fine line between reading a claim in light of the specification, and reading a limitation into the claim from the specification."). Limiting claims from the specification is generally not permitted absent a clear disclosure that the patentee intended the claims to be limited as shown. Phillips, 415 F.3d at 1323. The proper construction for "mounted on said body" is "attached to said body."

## III.     CONCLUSION

We affirm the district court's construction of the claim term "immediately" in all claims but 32 and 33; as to those two claims, we reverse. We reverse the district court's construction of the other disputed terms. We therefore vacate the summary judgment and remand the case for further proceedings consistent with this opinion.

AFFIRMED-IN-PART, REVERSED-IN-PART, VACATED, and REMANDED.