**MGM WELL SERVICES, INC., Plaintiff,**

v.

**MEGA LIFT SYSTEMS, LLC, Defendant.**

**Civil Action No. H–05–1634.**

United States District Court, S.D. Texas, Houston Division.

Jan. 30, 2007.

Joseph Dean Lechtenberger, Howrey LLP, Houston, TX, for Plaintiff.

Charles Wesley Alworth, Alworth Law and Engineering, Tyler, TX, Kent A. Rowald, Law Offices of Kent A. Rowald, P.C., Tomball, TX, William Loening Prickett, Seyfarth Shaw LLP, Boston, MA, Ira Phillip Domnitz, Winstead PC, Houston, TX, for Defendant.

## MEMORANDUM AND ORDER

NANCY F. ATLAS, District Judge.

This patent infringement case is before the Court on a Motion for Summary Judgment filed by Defendant Mega Lift Systems, LLC ("Defendant's Motion") [Doc. # 111]. Also pending are Plaintiff MGM Well Services, Inc.'s Motion for Summary Judgment on Inequitable Conduct, Laches, and Equitable Estoppel [Doc. # 105], Motion for Summary Judgment on Validity [Doc. # 109], Motion for Summary Judgment on Asserted Invalidity Defenses [Doc. # 110], and Motion for Summary Judgment on Infringement [Doc. # 116]. All pending motions have been fully briefed. Based on the Court's review of the full record in this case and the application of governing legal authorities, the Court **grants** Plaintiff's Motion for Summary Judgment on Inequitable Conduct, Laches, and Equitable Estoppel, Motion for Summary Judgment on Validity, and Motion for Summary Judgment on Asserted Invalidity Defenses. The Court **denies** Plaintiff's Motion for Summary Judgment on Infringement and **denies** Defendant's Motion in all respects.

## I. FACTUAL AND PROCEDURAL BACKGROUND

MGM Well Services, Inc. ("MGM") is the owner of United States Patent No. 6,719,060 ("the '060 Patent") which was issued on April 13, 2004. The '060 Patent relates to a two-piece plunger lift system [1] for use in gas wells to remove accumulated liquids and thereby increase the gas flow through the well to the surface.

MGM was previously granted United States Patent No. 6,209,637 ("the '637 Patent"), for a two-piece plunger lift system that includes a solid piece shaped like a dart and a separate hollow cylindrical piece. Under the '637 Patent, the two pieces, when dropped into the well, fall independently through the well pipe. When the two pieces reach the bottom of the well, they unite to operate much like a one-piece piston moving upward from the force of the gas being produced. When the two united pieces reach the surface, a decoupler near or at the surface of the well separates them and the two pieces again fall independently into the well to repeat the process.

MGM then obtained United States Patent No. 6,467,541 ("the '541 Patent"), for a two-piece plunger lift system similar to the system described in the '637 Patent, except the solid piece is a ball and the hollow cylindrical piece is referred to as a sleeve. When the united two-part plunger reaches the surface, a separator rod dislodges the ball from the sleeve, and the ball falls into the well. The sleeve is held in place by a mechanical device until the liquid below accumulates to such an extent that it needs to be removed for optimum gas flow. The disadvantage of this two-piece system is that the mechanical device holding the sleeve at the surface requires the venting of a small amount of gas to release the sleeve to fall back into the well, and oil and gas companies usually do not want to vent gas into the atmosphere.

The '060 Patent addresses this disadvantage by devising a "catcher assembly" located in a housing connected to the well at the surface that utilizes the unique shape of the separator rod and the flow of gas from the well to hold the plunger sleeve at the surface against gravity as desired. To release the plunger sleeve so it will fall back down the well, a motor

---

1. The system is referred to as a "two-piece" system because the actual plunger has two pieces. The patented devices, however, can be viewed as consisting of five main components: the sleeve, the ball, the separator rod, the housing or "lubricator," and the mechanism for interrupting the gas flow in order to release the sleeve.

valve near the surface is closed for a few seconds blocking the gas flowing in the well from reaching the plunger.

MGM became aware that Mega Lift Systems, LLC ("Mega Lift"), one of its prior distributors, was selling an allegedly infringing two-piece plunger lift system called the "Chaser" system. MGM filed this lawsuit against Mega Lift for patent infringement. In defense and as its counterclaim, Mega Lift asserts that the '060 Patent is unenforceable based on MGM's inequitable conduct before the United States Patent Office ("USPO") and based on laches and equitable estoppel. Mega Lift also asserts that the '060 Patent is invalid because it was either anticipated by or made obvious by United States Patent No. 2,001,012 ("the '012 Patent") issued in May 1935, because the patented device was on sale more than one year before the '060 Patent application was filed (the "on-sale bar"), and/or because MGM failed to identify all inventors of the patented device. Mega Lift also argues that its Chaser system does not infringe the '060 Patent.

Following an evidentiary hearing on MGM's Motion for Preliminary Injunction, the Court issued a Memorandum and Order on July 19, 2005, 2005 WL 1693152, granting the requested injunction. *See* Memorandum and Order [Doc. # 29]. On July 26, 2005, the Court issued an Amended Discovery Order [Doc. # 43] and a Docket Control Order [Doc. # 44] to govern in this case. On September 13, 2005, the Court granted the parties' joint motion and dismissed all claims and counterclaims regarding a separate patent issued to Mega Lift. *See* Agreed Order of Dismissal of Specific Claims and Counterclaims [Doc. # 52].

On February 1, 2006, the Court conducted a hearing pursuant to *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 390, 116 S.Ct. 1384, 134 L.Ed.2d 577 (1996)

("*Markman* hearing"). Subsequently, on February 10, 2006, 2006 WL 322586, the Court issued its Memorandum on Claim Construction [Doc. # 77], construing the disputed terms in the claims of the '060 Patent.

After the close of discovery on August 18, 2006, the parties filed dispositive and other motions. In a Memorandum and Order issued January 16, 2007, 2007 WL 150606 [Doc. # 171], the Court granted MGM's Motion Seeking Exclusion of the Expert Report and Testimony of Dr. Charles W. Alworth, Mega Lift's designated expert. The Court excluded all reports and testimony by Dr. Alworth on both patent law and technical issues.

On January 17, 2007, the Court conducted an evidentiary hearing on MGM's Motion to Exclude Based on Spoliation of Evidence, in which MGM sought to exclude all evidence of certain tests conducted by Mega Lift's President, James Bartley. During the hearing, Bartley and Mega Lift's counsel conceded that the test results were unreliable and inconclusive. On that basis, the Court in a Memorandum and Order entered January 19, 2007, 2007 WL 192895 [Doc. # 173], excluded evidence of the Bartley tests and test results. The Court denied, however, MGM's additional request for a deemed admission that the pressure beneath the plunger in Mega Lift's system is greater than the pressure above the plunger. *See* January 19, 2007 Memorandum and Order, p. 5.

In a Memorandum and Order entered January 24, 2007, 2007 WL 433283 [Doc. # 175], the Court granted MGM's Motion to Exclude Evidence and Argument Regarding Defenses and Evidence That Defendant Failed to Timely Disclose. Specifically, the Court excluded all evidence of a two-piece plunger system allegedly manufactured and sold by Dan Casey that uses a separator rod ("the Casey System") and

all evidence regarding the internal configuration of Mega Lift's "Chaser" system and the purported inner and outer diameters of its padded plungers to the extent they differ from the information Mega Lift originally provided to MGM. *See* January 24, 2007 Memorandum and Order [Doc. # 175].

On January 22, 2007, the parties advised the Court that they waived any jury demand and agreed to the trial of this case to the Court sitting without a jury. *See* Joint Stipulation of the Parties Consenting to Trial by the Court Sitting Without A Jury [Doc. # 174].

The motions that remain pending are dispositive motions that have been fully briefed and are ripe for decision.

## II. *STANDARD FOR SUMMARY JUDGMENT*

"When evaluating a motion for summary judgment, the court views the record evidence through the prism of the evidentiary standard of proof that would pertain at a trial on the merits." *SRAM Corp. v. AD–II Engineering, Inc.*, 465 F.3d 1351, 1357 (Fed.Cir.2006). A patent is presumed valid under 35 U.S.C. § 282, and the presumption "can be overcome only through facts supported by clear and convincing evidence." *Id.* (citing *U.S. Surgical Corp. v. Ethicon, Inc.*, 103 F.3d 1554, 1563 (Fed.Cir.1997)). As a result, at the summary judgment stage, a party asserting affirmative defenses against a patent "must submit such clear and convincing evidence of facts underlying invalidity that no reasonable jury could find otherwise." *Id.* (citing *Perkin–Elmer Corp. v. Computervision Corp.*, 732 F.2d 888, 893 (Fed.Cir.1984)); *see Invitrogen Corp. v. Biocrest Mfg., L.P.*, 424 F.3d 1374, 1378 (Fed.Cir.2005) (overcoming presumption of patent validity at the summary judgment stage requires proof by clear and convincing evidence).

Summary judgment on infringement is appropriate only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *Boss Control, Inc. v. Bombardier Inc.*, 410 F.3d 1372, 1376 (Fed.Cir.2005) (citing Fed. R. Civ. P. 56(c); *Fierros v. Tex. Dep't of Health*, 274 F.3d 187, 190 (5th Cir.2001)). Infringement requires the Court to compare the patent claims as properly construed with the accused device. *See id.* Summary judgment should be denied if the evidence would permit a reasonable fact-finder to return a verdict for the nonmoving party. *See id.*

## III. *ANALYSIS*

### A. *Inequitable Conduct, Laches, and Equitable Estoppel [Doc. # 105]*

MGM has moved for summary judgment on Mega Lift's affirmative defenses of inequitable conduct, laches, and equitable estoppel. Mega Lift conceded in its Response that it does not have evidence to support the laches and equitable estoppel arguments. *See* Response [Doc. # 135], p. 12. As a result, MGM's motion for summary judgment on these defenses is granted.

Concerning the inequitable conduct defense, Mega Lift argues that the '060 Patent is unenforceable because MGM withheld information regarding the '637 and the '541 Patents,[2] and withheld information regarding the alleged sale of the patented device more than one year before the application was filed. "A patent may be rendered unenforceable for inequitable conduct if an applicant, with intent to mislead or deceive the examiner, fails to disclose material information or submits materially false information to the

---

**2.** MGM is the owner of the '637 and the '541     Patents.

PTO during prosecution." *Sanofi–Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1380 (Fed.Cir.2006) (quoting *Digital Control, Inc. v. Charles Mach. Works*, 437 F.3d 1309, 1313 (Fed.Cir.2006)). The party alleging inequitable conduct must prove both materiality and intent to deceive by clear and convincing evidence. *Id.* Materiality and intent to deceive are separate, essential elements of inequitable conduct. *Id.* at 1381.

Mega Lift claims that MGM engaged in inequitable conduct by failing to disclose essential information regarding the '637 and the '541 Patents. Specifically, Mega Lift argues that MGM failed to disclose that the '541 Patent requires a bypass valve. Mega Lift has failed to present clear and convincing evidence that MGM withheld or otherwise failed to disclose this information with the intent to deceive the USPO. Indeed, the evidence in the record shows clearly that the '637 and the '541 Patents were not only disclosed to the USPO during the application for the '060 Patent, they were incorporated by reference into the application. As a result, all information contained in the '637 and the '541 Patents, including any requirement for a bypass valve, was presented to the USPO for its consideration in evaluating the application for the '060 Patent. MGM is entitled to summary judgment on Mega Lift's inequitable conduct defense, and Mega Lift's motion for summary judgment on that issue is denied.

Mega Lift also argues that MGM withheld information regarding sales of the patented device more than one year before the application for the '060 Patent was filed. Mega Lift has failed to present any evidence, much less clear and convincing evidence, that MGM marketed its patented device more than one year before it filed

its application resulting in the '060 Patent. Mega Lift's evidence regarding alleged disqualifying sales of the Casey system does not rise to the level of clear and convincing. Moreover, the Court in its January 24, 2007 Memorandum and Order [Doc. # 175] excluded all evidence of the Casey system.

Mega Lift has failed to present clear and convincing evidence to support its inequitable conduct defense. As a result, MGM is entitled to summary judgment on this defense and Mega Lift's motion for summary judgment on the issue is denied.

**B.  *Anticipation and Obviousness [Doc. # 109]***

■  Mega Lift asserts that the '060 Patent is invalid under 35 U.S.C. § 102(b) as anticipated by the '012 Patent issued in 1935, or under 35 U.S.C. § 103 for obviousness based on a combination of the '012 Patent and United States Patent No. 3,012,513, issued in 1959.[3]  MGM and Mega Lift have each moved for summary judgment on these invalidity defenses.

■  *Anticipation.*—"A claim is anticipated and thus invalid if each and every limitation of a claim is found, expressly or inherently, in a single prior art reference." *Planet Bingo, LLC v. GameTech Intern., Inc.*, 472 F.3d 1338, 1346 (Fed.Cir.2006) (citing *Schering Corp. v. Geneva Pharm.*, 339 F.3d 1373, 1379 (Fed.Cir.2003)); *see Impax Labs., Inc. v. Aventis Pharm. Inc.*, 468 F.3d 1366, 1380 (Fed.Cir.2006).

Independent Claim 1 of the '060 Patent discloses:

A plunger lift for a well producing through a production string communicating with a hydrocarbon formation, comprising a free piston having at least

---

**3.**  The Court notes that Mega Lift presents the anticipation and obviousness defenses through its designated expert, Dr. Alworth, whose report and testimony has been excluded by the Court.

two sections, movable independently downwardly in the well, the sections comprising a lower component and a sleeve providing a seating surface for receiving the lower component so the lower component and sleeve join together in the well for pushing liquid, above the piston, upwardly and a **catcher assembly on the well at the surface** comprising a housing, a separator rod in the housing for receiving the sleeve thereon and dislodging the lower component, the housing, rod and sleeve providing therebetween flow passes for formation contents, at least one of the flow passages being of variable cross-sectional size producing a pressure drop **sufficient to hold the sleeve in the housing against gravity.**

Claim 1 of the '060 Patent, col. 10, lines 45–59 (emphasis added). Each of the asserted claims in the '060 Patent includes a similar limitation generally requiring the sleeve of the two-piece plunger to be held in the housing at the surface and against the force of gravity.

Neither the "catcher assembly on the well at the surface" nor the "pressure drop sufficient to hold the sleeve in the housing against gravity" in Claim 1 of the '060 Patent is disclosed in the '012 Patent. Indeed, the device covered by the '012 Patent is specifically intended not to be caught and remain at the surface where it is held against gravity. Because the '012 Patent does not contain all the elements and limitations of the '060 Patent, MGM is entitled to summary judgment on Mega Lift's anticipation argument, and Mega Lift's motion for summary judgment on the issue is denied.

■ *Obviousness.*—Mega Lift argues that a combination of the '012 Patent and the '513 patent, which involves a device where a gas pressure differential is used to hold a plunger against gravity, was obvious and renders the '060 Patent inval-

id pursuant to 35 U.S.C. § 103. To succeed on an obviousness defense based on a combination of elements in the prior art, the alleged infringer must show by clear and convincing evidence that there was a motivation for someone to "select the references and to combine them in the particular claimed manner to reach the claimed invention." *Eli Lilly and Co. v. Zenith Goldline Pharm., Inc.*, 471 F.3d 1369, 1379 (Fed.Cir.2006); *see Sanofi–Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1379 (Fed.Cir. 2006) (holding that "a party alleging invalidity due to obviousness must articulate the reasons one of ordinary skill in the art would have been motivated to select the references and to combine them to render the claimed invention obvious"); *Ruiz v. A.B. Chance Co.*, 234 F.3d 654, 664 (Fed. Cir.2000) (holding that in order "to prevent a hindsight-based obviousness analysis," the proper inquiry is "whether there is a reason, suggestion, or motivation in the prior art or elsewhere that would have led one of ordinary skill in the art to combine the references").

■ The Court should also consider "commercial success, long felt but unsolved needs, failure of others, etc." *Graham v. John Deere Co.*, 383 U.S. 1, 17–18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966). "Commercial success is relevant because the law presumes an idea would successfully have been brought to market sooner, in response to market forces, had the idea been obvious to persons skilled in the art." *Merck & Co., Inc. v. Teva Pharmaceuticals USA, Inc.*, 395 F.3d 1364, 1376, *reh'g denied*, 405 F.3d 1338 (Fed.Cir.2005).

Mega Lift fails to present clear and convincing evidence, or even to identify clearly, a "reason, suggestion, or motivation" in the prior art for combining the '012 and the '513 Patents. Indeed, as MGM demonstrated during the Preliminary Injunction hearing and in its motion

for summary judgment on the obviousness defense, the device covered by the '012 Patent and the device covered by the '060 Patent perform differently and have different goals. The '012 Patent, issued in 1935, covered a device used in oil wells to maximize the amount of oil pushed out of the well while minimizing the flow of gas. *See* '012 Patent, col. 2, lines 1–12("My invention relates to apparatus for pumping oil from wells [and] has as its main object that of facilitating the flow of oil in a well to the surface and conserving gas...."). The device covered by the '060 Patent is used in gas wells to maximize the flow of gas. The device covered by the '012 Patent was designed so that the plunger lift moved as rapidly and as frequently as possible up and down the well, which teaches away from the '060 device that holds the plunger sleeve at the surface of the well against gravity for periods of time before allowing it to fall back to the bottom of the well.

Additionally, the uncontroverted evidence shows that the plunger lift system covered by the '060 Patent has enjoyed great commercial success, indicating that if it had been made obvious by a combination of the '012 Patent and the '513 Patent, one of ordinary skill in the art would have developed it in something less than the approximately forty-three years between the issuance of the '513 Patent in 1959 and the development in 2002 of the two-piece plunger lift system covered by the '060 Patent. Mega Lift has failed to present clear and convincing evidence to support its obviousness defense. As a result, MGM is entitled to summary judgment on

the defense and Mega Lift's motion for summary judgment on the issue is denied.

## C. On–Sale Bar and Improper Joinder of Inventors [Doc. # 110]

▮ The parties have both moved for summary judgment on Mega Lift's claims that the '060 Patent is invalid because the device was offered for sale more than one year prior to the filing date of the patent application and because MGM failed to name Dan Casey as an inventor.[4]

▮ *On–Sale Bar.*—A person is not entitled to a patent if the invention was on sale in the United States more than one year before the patent application was filed. *See* 35 U.S.C. § 102(b); *Plumtree Software, Inc. v. Datamize, LLC,* 473 F.3d 1152, 1160–61 (Fed.Cir.2006); *Gemmy Industries Corp. v. Chrisha Creations Ltd.,* 452 F.3d 1353, 1358 (Fed.Cir.2006). In order for the patent to be invalid based on the on-sale bar, the "the product must be the subject of a commercial offer for sale [and] the invention must be ready for patenting." *Pfaff v. Wells Elecs., Inc.,* 525 U.S. 55, 67, 119 S.Ct. 304, 142 L.Ed.2d 261 (1998); *Enzo Biochem, Inc. v. Gen–Probe,* 424 F.3d 1276, 1281 (Fed.Cir.2005). Invalidity "based on the on-sale bar must be established by clear and convincing evidence." *Gemmy,* 452 F.3d at 1358.

Mega Lift argues that MGM sold the device covered by the '060 Patent more than one year before the patent application was filed because, according to Mega Lift, the device is the same device as is covered by MGM's '637 Patent.[5] To support this

---

4. MGM also moved for summary judgment on Mega Lift's arguments that the '060 Patent is invalid because MGM failed to satisfy the written description requirements of 35 U.S.C. § 112, because the device covered by the '060 Patent is possibly inoperative, and because MGM has abandoned the invention. Mega Lift responds that it "has never asserted any of [these] defenses." *See* Response [Doc.

# 127], p. 12. Consequently, to the extent Mega Lift's pleadings can be construed to raise these issues, the defenses are withdrawn and MGM's motion for summary judgment on them is **moot.**

5. To the extent Mega Lift relies on Dr. Alworth's report for this argument, that evidence has been excluded.

argument, Mega Lift cites a statement by MGM's attorney during the preliminary injunction hearing in this case explaining the **difference** between the devices covered by the two patents. Mega Lift also cites testimony by Edward A. Wells, the inventor of the plunger lift system covered by the '060 Patent, describing the **differences** between the two devices. Mega Lift has failed to present clear and convincing evidence that MGM sold the device covered by the '060 Patent more than one year before it filed the patent application.

▆ Mega Lift next argues that the on-sale bar applies because the Casey system was on sale more than one year before the patent application was filed. In support of its position, Mega Lift presents uncorroborated affidavits from Casey. Such conclusory statements do not rise to the level of clear and convincing evidence. *See, e.g., Juicy Whip, Inc. v. Orange Bang, Inc.,* 292 F.3d 728, 742–43 (Fed.Cir.2002) (testimony regarding invalidating activities must be corroborated by reliable evidence preferably in the form of contemporaneous physical records). Moreover, the Court has previously excluded all evidence of the Casey system and, as a result, this purported evidence is unavailable to support Mega Lift's on-sale bar defense.

Mega Lift has failed to present evidence, clear and convincing or otherwise, that MGM or any other party offered for sale the device covered by the '060 Patent more than one year before the patent application was filed. As a result, MGM's motion for summary judgment on this issue is granted and Mega Lift's motion as to this issue is denied.

▆ **Inventorship.**—A person is not entitled to a patent if he did not "invent the subject matter sought to be patented." *See* 35 U.S.C. § 102(f); *Checkpoint Sys., Inc. v. All–Tag Security S.A.,* 412 F.3d 1331, 1337–38 (Fed.Cir.2005). This provision has been construed to re-

quire that the patent accurately list all inventors of the claimed device. *See Checkpoint,* 412 F.3d at 1338 (citing *Pannu v. Iolab Corp.,* 155 F.3d 1344, 1349 (Fed.Cir.1998)); *Gemstar–TV Guide Intern., Inc. v. International Trade Com'n,* 383 F.3d 1352, 1381 (Fed.Cir.2004). There is "a presumption that the named inventors on a patent are the true and only inventors." *Gemstar,* 383 F.3d at 1381. As a result, co-inventorship must be shown by clear and convincing evidence, and must be proven with more than the testimony of the alleged co-inventor. *Id.* at 1382.

▆ Mega Lift argues that Dan Casey should have been included as an inventor on the '060 Patent because the Casey system is the same device as is covered by that patent. Mega Lift supports this argument with its expert report, which has previously been excluded by the Court. Mega Lift also relies on affidavits by Casey stating that before August 1999 he suggested to Wells that a ball could be used as the lower component of the two-piece plunger lift system. The Casey affidavits are uncorroborated and such uncorroborated testimony by the alleged co-inventor cannot support an inventorship claim. Additionally, Casey has recanted the relevant statements in his affidavits, conceding that he did not meet with Wells until mid–2000, long after Wells had independently conceived of using a ball as the lower component of the plunger. There is no clear and convincing evidence to support Mega Lift's inventorship claim under § 102(f). Mega Lift's inventorship argument thus fails and MGM is entitled to summary judgment on the inventorship claim.

### D. Infringement [Docs. # 111 and # 116]

▆ MGM seeks summary judgment that Mega Lift's "Chaser" plunger

lift systems infringe claims 1–3, 8, and 22–24 of the '060 Patent.[6] Mega Lift seeks summary judgment that its "Chaser" systems do not infringe the '060 Patent, either literally or under the doctrine of equivalents.

"A determination of patent infringement requires a two-step analysis: first, the meaning of the claim language is construed, then the facts are applied to determine if the accused device falls within the scope of the claims as interpreted." *MBO Labs., Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1329 (Fed.Cir.2007). "Literal infringement requires that each and every claim limitation be present in the accused product." *Abraxis Bioscience, Inc. v. Mayne Pharma (USA) Inc.*, 467 F.3d 1370, 1378 (Fed.Cir.2006). For there to be infringement under the doctrine of equivalents, any differences between the claim limitations and the accused device must be insubstantial. *See Ortho–McNeil Pharm., Inc. v. Caraco Pharm. Labs., Ltd.*, 476 F.3d 1321, 1325–26 (Fed.Cir. 2007); *Abraxis*, 467 F.3d at 1379. "An accused device that 'performs substantially the same function in substantially the same way to obtain the same result' as the patented invention may infringe under this doctrine." *Abraxis*, 467 F.3d at 1379 (quoting *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608, 70 S.Ct. 854, 94 L.Ed. 1097 (1950)). The party asserting infringement bears the burden of proof. *See Applied Med. Resources Corp. v. U.S. Surgical Corp.*, 448 F.3d 1324, 1333 (Fed.Cir.2006).

Mega Lift claims to have two "Chaser" systems. Mega Lift maintains that, prior to the July 2005 preliminary injunction in this case, it sold a two-piece plunger lift device that included a separator rod with a bulge in it. According to Mega Lift, after the July 2005 preliminary injunction, it began to use a straight separator rod. Mega Lift argues that its devices do not infringe the '060 Patent because they do not have "multiple flow passages" as required by claims 1 and 8 of the '060 Patent, do not have "a flow passage of variable cross-sectional area sufficient to produce a pressure drop to hold the sleeve in the housing against gravity" as required by claim 1 of the '060 Patent, and do not "hold the sleeve in the decoupler by passing formation contents upwardly" as required by Claim 22 of the '060 Patent.

Mega Lift concedes that its device using the separator rod with a bulge contains one flow passage between the rod and the sleeve. Mega Lift asserts, however, that neither of its devices contains "multiple flow passages." The dispute in this regard involves whether spaces in the Mega Lift devices constitute "flow passages" or whether they are simply tiny spaces serving only to permit the sleeve to move within the housing without friction. This issue is best resolved after the full presentation of evidence by both parties.[7]

The Court construed the claim term "a flow passage of variable cross-sectional area sufficient to produce a pressure drop to hold the sleeve in the housing against gravity" to mean "at least one of the flow

---

6. MGM also seeks summary judgment that Mega Lift engaged in contributory infringement and/or infringement by inducement. Both theories are "dependent upon the existence of direct infringement." *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1372 (Fed.Cir.2006). As a result, the Court's denial of summary judgment on

the infringement claims necessarily requires denial of MGM's motion for summary judgment on these additional theories of infringement.

7. The presentation of evidence at trial will be subject to the Court's prior rulings excluding Mega Lift's evidence on certain issues.

passageways being of variable cross-sectional size such that the well contents flow creates a pressure beneath the sleeve that is higher than the pressure above the sleeve, the difference in pressure being sufficient to maintain the sleeve in the housing and to prevent gravity from causing the sleeve to fall back into the well." *See* Memorandum on Claim Construction [Doc. # 77], p. 11. MGM does not seek summary judgment on Mega Lift's device using the straight separator rod. The issues for summary judgment are whether the Mega Lift device with a bulging separator rod contains a "flow passage of variable cross-sectional area" and whether the sleeve is held in the housing due to a pressure differential. To prove the existence of a pressure differential, MGM relies in large part on the laws of physics and basic fluid dynamics. The Court prefers to hear and consider the evidence presented on this issue at trial before deciding the issue.

The Court construed the term in claim 22 "holding the sleeve in the decoupler" by passing formation contents upwardly to mean "holding the sleeve on the rod in the container or casing." *See id.* at 15. At the hearing in this case on a spoliation issue, Mega Lift's president testified generally that the Mega Lift devices hold the sleeve in the housing not by passing formation contents upwardly, but by the weight of fluid molecules striking the relatively flat bottom of the sleeve. The Court finds that the interests of justice favor allowing Mega Lift an opportunity to explain this theory more fully.

The infringement issues in this case are more properly decided after a full presentation of the evidence, subject to the Court's prior rulings excluding certain evidence. This will give the Court the opportunity to ask questions of the witnesses in order to clarify matters that are unclear from the written record. Consequently, the Court denies both motions for summary judgment on the issue of infringement.

## IV. CONCLUSION AND ORDER

Mega Lift has failed to present evidence of inequitable conduct on the part of MGM during the patent application process and has conceded that it has no evidence to support a laches or equitable estoppel argument. Mega Lift has failed to present clear and convincing evidence to support its anticipation and obviousness arguments. Mega Lift's purported evidence in connection with its on-sale bar and improper joinder of inventors arguments has either been excluded or been recanted. Even if the evidence were considered, it would not satisfy Mega Lift's "clear and convincing" evidence burden. Defendant claims not to assert defenses under 35 U.S.C. § 112, of inoperability, or of abandonment. As a result, Plaintiff is entitled to summary judgment on its motions for summary judgment addressing these issues and Defendant Mega Lift's Motion on these issues is denied.

The Court has considered the summary judgment record and concludes that a trial is necessary for full and complete consideration of the infringement issue. As a result, Plaintiff's Motion for Summary Judgment on Infringement and Defendant's Motion on infringement are denied. Accordingly, it is hereby

**ORDERED** that Defendant's Motion for Summary Judgment [Doc. # 111] and Plaintiff's Motion for Summary Judgment on Infringement [Doc. # 116] are **DENIED.** It is further

**ORDERED** that Plaintiff's Motion for Summary Judgment on Inequitable Conduct, Laches, and Equitable Estoppel [Doc. # 105], Motion for Summary Judgment on Validity [Doc. # 109], and Motion for Summary Judgment on Asserted Inval-

idity Defenses [Doc. # 110] are **GRANT-ED.**

The parties are reminded that they are required to engage in mediation prior to **March 23, 2007.**