DYK, Circuit Judge,
dissenting in part.
Although I agree with the majority on the issue of willfulness, I disagree as to its construction of “screening medium” and “screening plate” in claims 1, 10, and 18 of U.S. Patent No. RE39,940 (“the '940 patent”) [1] and with its decision to set aside the judgment of non-infringement.
The district court found, and the majority does not dispute, that the terms *1379 “screening medium” and “screening plate” are synonymous, and that the “screening medium” or “screening plate” must be “perforated.” In my view, the intrinsic record demonstrates that “perforated” in this context requires that holes or openings be made through an otherwise solid object, such as a plate. Because the accused product’s wedgewire construction does not meet this limitation, I think the district court’s grant of summary judgment of noninfringement should be affirmed.
During prosecution, the examiner rejected AFT’s claims as anticipated by U.S. Patent No. 4,276,265 to Gillespie (“Gillespie” or “the '265 patent”), which is directed to a screening device. The examiner found that Gillespie, which disclosed a wedgewire construction comprised of generally parallel “spaced apart profiled wire members,” '265 Patent col.3 1.64, was “[structurally ... indistinguishable” from AFT’s claimed screen device. J.A. 349-50. Although AFT did not explicitly disclaim coverage of wedgewire devices in seeking to overcome the rejection, AFT excluded wedgewire screens from the scope of the claims by overcoming the rejection based on the argument that the screen of the reference “is clearly not disclosed as a screen plate as used in the treatment of pulp” and was not “intended to be used for or appropriate for use for the pulp treatment art.” J.A. 323-24. AFT argued that “the terms ‘screen,’ ‘screening,’ and ‘screen plate’ are terms of the pulp treatment art, having specific meanings to those of ordinary skill in the pulp treatment art.”[2] J.A. 322. AFT emphasized to the examiner that the “meaning of the term ‘screen plate’ in claim 1 is consistent with this meaning in the art.’ ”[3] J.A. 323.
To demonstrate the meaning of the relevant claim term to those of ordinary skill in the art, AFT provided specific definitions from a “well-recognized reference on pulp and paper technology,” the Handbook of Pulp & Paper Terminology. J.A. 322-23. AFT defined “screen plate” as a “[p]erforated metal plate utilized on many designs of pulp screening equipment that impedes pulp flow and is instrumental in causing a separation between suspended particles on the basis of their size, shape, and/or flexibility.” J.A. 323 (emphasis added). Significantly too the Handbook defined a “perforated plate” as a “[sjcreen plate with straight-through holes, usually made by a punch.” G.A. Smook, Handbook of Pulp & Paper Terminology 151 (1990). Thus, the definition of perforated plate required that holes be made by punching, drilling, or some other similar method of creating a hole through an otherwise solid object. This would exclude wedgewire construction. By explicitly adopting a definition of the term “screening medium” or “screening plate,” AFT excluded wedgewire construction from the scope of the claims. See Computer Docking Station Corp. v. Dell, Inc., 519 F.3d *1380 1366, 1374 (Fed.Cir.2008) (holding that a patentee can limit the meaning of a claim term “by clearly characterizing the invention in a way to try to overcome rejections based on prior art”); MBO Labs., Inc. v. Becton, Dickinson & Co., 474 F.3d 1323, 1330 (Fed.Cir.2007) (“Prosecution arguments like this one which draw distinctions between the patented invention and the prior art are useful for determining whether the patentee intended to surrender territory, since they indicate in the inventor’s own words what the invention is not.”).[4]
In addition to the prosecution history, the claims themselves confirm that “perforated” requires that holes or openings be made through a solid object, and does not encompass wedgewire screens. Claim 18 claims a method of manufacturing a “screening plate” (a term agreed to be synonymous with “screening medium”) which requires “forming openings [that] ... extend entirely through said screening plate.” '940 Patent col.15 ll.20-28 (emphasis added); see also id. col.6 ll.15-21. The claims and specification make clear that the disclosed method also requires a “screening plate” with two faces and the ability to “form[ ] elongated ... grooves” in the screening plate. Id. col.15 ll.17; see also id. col.6 ll.17-18. The majority’s construction of “screening medium” as encompassing wedgewire screens does not comport with this claimed method of manufacture. Moreover, in a different context, the specification refers to a “perforated” backing plate, '940 Patent col.2 ll.66-67, whose holes are “punched or drilled,” id. col.8 l.51, which is again inconsistent with “perforated” encompassing wedgewire construction. See also id. col.11 ll.17-19 (“[T]he openings may be cylindrical or other shapes, as desired, and may be punched or drilled through the material.”).
As the majority points out, the specification briefly mentions wedgewire as an embodiment of the invention.[5] Not every embodiment disclosed in the specification necessarily falls within the scope of the claims. AllVoice Computing PLC v. Nuance Commc’ns, Inc., 504 F.3d 1236, 1248 (Fed.Cir.2007) (“[E]very claim need not contain every feature taught in the specification.”); Nazomi Commc’ns, Inc. v. ARM Holdings, PLC, 403 F.3d 1364, 1369 (Fed.Cir.2005) (holding that a claim may “embrac[e] different subject matter than is illustrated in the specific embodiments in the specification”); Golight, Inc. v. WalMart Stores, Inc., 355 F.3d 1327, 1331 (Fed.Cir.2004) (“[Patentees [are] not required to include within each of their claims all of [the] advantages or features described as significant or important in the written description.”). As discussed above, to the extent this embodiment was within the claims, AFT specifically defined *1381 the term “screening medium” during prosecution to exclude this embodiment.
Other prior art references also make the same distinction between perforated screens and wedgewire screens. See, e.g., J.A. 935 (differentiating a vee-wire (or wedgewire) screen from a perforated plate); J.A. 1373-74 (describing various methods of manufacturing a “screen plate,” each of which begins with a solid plate); J.A. 1390-92 (describing “screen plates” as being punched, drilled, or slotted by milling). These references can help to demonstrate how a disputed term was used by those of skill in the art at the time of the invention. See Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1584 (Fed.Cir.1996).
Even the definitions of “perforated” offered by AFT support the conclusion that the claims require a solid plate with holes through the face. AFT argued that “perforated” means “having holes or perforations.” Appellant’s Br. 20. AFT further argued that “hole” was defined in the same dictionary as “an opening through something.” Id. (emphasis added). AFT failed to note in its brief, however, that the entire definition of “hole” reads “an opening through something: perforation.” J.A. 2381 (emphasis added). That very dictionary defines “perforation” as “a hole or pattern made by or as if by piercing or boring.” J.A. 2380 (emphasis added). Thus, although a hole need not be made by piercing or puncturing, it must be of the type made by piercing or boring — that is, it must be through an object. This definition, in the dictionary offered by AFT, would naturally exclude wedgewire construction because the openings in the wedgewire are merely gaps between individual wires, not perforations.
It is not disputed that the allegedly infringing products use wedgewire construction. Because an interpretation of “perforated” that excluded wedgewire devices was adopted during prosecution and before the district court, the district court’s final judgment of noninfringement should be affirmed. I respectfully dissent.

. Claim 1, representative of the asserted apparatus claims, recites:
A screen cylinder comprising: a generally cylindrical screening medium having a plurality of openings therethrough;
a generally cylindrical structural backing plate for structurally supporting said screening medium and having a plurality of openings therethrough;
said screening medium and said structural backing plate lying concentrically one within the other and having respective opposed surfaces in engagement with one another at an interface therebetween whereby said backing plate structurally supports said screening medium;
one of said screening medium and said backing plate having a plurality of circumferentially extending recesses formed in its opposing surface and opening at the opposing surface of the other of said screening medium and said backing plate at the interface thereof establishing communication between the respective openings of said screening medium and said backing plate; and
a plurality of axially spaced projections spaced one from the other in the axial direction defining said recesses and projecting radially from one of said screening medium and said backing plate at said interface;
the openings in said screening medium being elongated and extending in a generally axial direction substantially normal to the circumferential extent of said recesses.
'940 Patent col. 13 11.24-52 (emphasis added). Claim 18, the only independent method claim asserted by AFT, recites:
A method of manufacturing a screen for use in screening for pulp, said screen being formed of a screening plate and a backing plate, said screening plate having first and second opposite faces, comprising the steps of:
(a) forming elongated, substantially parallel, grooves in said first face, each groove having a side face and a bottom;
(b) forming openings through the bottom of the grooves in said first face and into the screening plate to terminate within the screening plate short of said second face thereof;
(c) forming elongated grooves in the second face of said screening plate inclined relative to the longitudinal extent of the grooves formed in step (a) and to a depth to expose the openings formed in step (b) so that the openings extend entirely through *1379 said screening plate, and leave a plurality of ridges in the second face spaced one from the other there-along and extending in a direction inclined relative to the longitudinal extent of said grooves.
'940 Patent col.15 11.13-32 (emphasis added).

. The majority emphasizes the distinction made by AFT based on the size of the slot in the Gillespie screen, but that was only one distinction offered to demonstrate that Gillespie would not be appropriate in the art of pulp treatment.

. Claim 1 does not actually use the term "screen plate.” However, this reference to " ‘screen plate' in claim 1,” J.A. 323, in the prosecution history is best understood as a reference to the term “screening medium” in claim 1.

. Quite apart from AFT’s reliance on particular definitions during prosecution, it is appropriate to look at industry standards and definitions to interpret disputed claim terms. See Chimie v. PPG Indus., Inc., 402 F.3d 1371, 1378-79 (Fed.Cir.2005) (using an industry standard to interpret claim term); see also LG Elees., Inc. v. Bizcom Elees., Inc., 453 F.3d 1364, 1375 (Fed.Cir.2006) ("Although we have concluded that the patentee did not expressly adopt the definition of requesting agent’ in the incorporated industry standard, that standard remains relevant in determining the meaning of the claim term to one of ordinary skill in the art at the time the patent application was filed, and it is treated as intrinsic evidence for claim construction purposes." (citing V-Formation, Inc. v. Benetton Group SpA, 401 F.3d 1307, 1311 (Fed.Cir.2005))).

. The specification contains this single sentence in reference to wedgewire: "Also, a wedgewire screening plate may be used.” Id. col.11 ll.64-65.